Slip Op. 06-188

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                    :
ALLEGHENY LUDLUM CORP. and                          :
AK STEEL CORP.,                                     :
                                                    :
              Plaintiffs,                           :
                                                    :        Before:      WALLACH, Judge
       v.                                           :        Court No.:    05-00488
                                                    :
UNITED STATES,                                      :
                                                    :        **PUBLIC VERSION**
              Defendant,                            :
                                                    :
       and                                          :
                                                    :
OUTOKUMPU STAINLESS, LTD., et al.,                  :
                                                    :
              Defendant-Intervenors.                :
_____:


[Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is SUSTAINED.]


                                          Dated: December 22, 2006

Kelley Drye Collier Shannon, (David A. Hartquist, Kathleen W. Cannon, and R. Alan Luberda) for Plaintiffs Allegheny Ludlum Corp. and AK Steel Corp.

David A.J. Goldfine and Michael K. Haldenstein, Attorney-Advisors, James M. Lyons, General Counsel, Andrea C. Casson, Assistant General Counsel for Litigation, Office of the General Counsel, U.S. International Trade Commission, for Defendant.

Shearman & Sterling, LLP, (Ryan A.T. Trapani, Robert S. LaRussa and Stephen J. Marzen) for Defendant-Intervenors Arcelor Stainless Steel USA, LLC and U&A France.

Steptoe & Johnson, LLP, (Gregory S. McCue, Richard O. Cunningham and Susan Rebecca Gihring) for Defendant-Intervenors Outokumpu Stainless, Ltd. and Outokumpu Stainless Coil, Inc.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

Plaintiffs, Allegheny Ludlum Corporation and AK Steel Corporation (collectively "Allegheny" or "Plaintiffs") challenge aspects of the United States International Trade Commission's ("ITC" or "the Commission") final determination in its five-year review of outstanding orders against stainless steel sheet and strip ("SSSS") as published in Stainless Steel Sheet and Strip from France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom, Inv. Nos. 701-TA-381-382 and 731-TA-797-804 (Review), USITC Pub. 3788 (July 2005) ("Final Determination (Pub.)"), Confidential Views of the Commission, Plaintiffs' App. 1., Confidential Admin. Rec. No. 299 (July 2005) ("Views"); see also Certain Stainless Steel Sheet and Strip From France, Germany, Italy, Japan, Korea, Mexico, Taiwan and the United Kingdom, 70 Fed. Reg. 41,236 (July 18, 2005) ("Notice of Final Results"). Plaintiffs, Allegheny, who are domestic producers, contest the ITC's decision not to cumulate subject imports from France and the United Kingdom on the basis of different conditions of competition and the Commission's finding that subject imports from France and the United Kingdom would not likely lead to continuation or recurrence of material injury to a United States industry within a foreseeable time. Plaintiffs' Memorandum of Law in Support of Motion for Judgment on the Agency Record ("Plaintiffs' Motion") at 1-2. The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii). The court finds that the Commission's findings are supported by substantial evidence and are in accordance with law.

2

## II
## BACKGROUND

On July 19, 1999, the Commission issued a determination that the United States SSSS industry was materially injured by subject imports from France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom. Certain Stainless Steel Sheet and Strip from France, Germany, Italy, Japan, Korea, Mexico, Taiwan and the United Kingdom, Inv. Nos. 701-TA-380-82, 731-TA-797-804, USITC Pub. 3208 (July 1999) ("Original Determination"); Certain Stainless Steel Sheet and Strip From France, Germany, Italy, Japan, The Republic of Korea, Mexico, Taiwan, and The United Kingdom, 64 Fed. Reg. 40,896 (July 28, 1999). Subsequent to the ITC's finding, the United States Department of Commerce ("Commerce" or "the Department") imposed antidumping orders on imports from France, Germany, Italy, Japan, Korea, Mexico, Taiwan and the United Kingdom and countervailing duty orders on imports from France, Italy, and Korea.[1] Notice of Antidumping Duty Order; Stainless Steel Sheet and Strip in Coils From United Kingdom, Taiwan and South Korea, 64 Fed. Reg. 40,555 (July 27, 1999); Amended Final Determination: Stainless Steel Sheet and Strip in Coils From the Republic of Korea; and Notice of Countervailing Duty Orders: Stainless Steel Sheet and Strip in Coils From France, Italy, and the Republic of Korea, 64 Fed. Reg. 42,923 (August 6, 1999).

On June 1, 2004, the Commission commenced a five-year review pursuant to 19 U.S.C. §1675(c) in which it made a determination as to whether revocation of the countervailing and antidumping duty orders issued would be "likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury." 19 U.S.C. §

---

[1] The countervailing duty order on France was subsequently revoked. Confidential Staff Reports (CR), May 23, 2005 at I-1 n.2, Public Report (PR) at I-1 n.2.

1675(c). The ITC's final determination was affirmative with regard to cumulated imports from Germany, Italy, Japan, Korea, Mexico and Taiwan. See Notice of Final Results, 70 Fed. Reg. at 41,236; Views at 1. With respect to France and the United Kingdom, the Commission determined that revocation of antidumping duty orders on SSSS would not likely lead to continuation or recurrence of material injury to an industry in the U.S. within a reasonably foreseeable time. Id. The Commission based its negative injury determination primarily on a finding that French imports underwent a significant decline during the original investigation and continued to account for less than 1% of the U.S. market during the review period. Id. at 38-39. The Commission also exercised its discretion not to cumulate subject imports from France and the United Kingdom pursuant to 19 U.S.C. § 1675a(a)(7) based on a finding that different conditions of competition exist in France and the United Kingdom as compared with other subject countries. Id. at 19-21.

The parties to this action besides Plaintiff and Defendant are Defendant-Intervenors U&A France and Arcelor Stainless USA, LLC and Outokumpu Stainless, Ltd. and Outokumpu Stainless Coil, Inc. (collectively "Outokumpu"). U&A France is the only producer of SSSS in France and the sole French exporter of SSSS to the United States. Id. at 9. Outokumpu is the sole UK exporter of SSSS to the United States and the principal producer of SSSS in the UK. Id. at 16. Both parties oppose Plaintiffs' Motion for Judgment Upon the Agency Record. Defendant-Intervenors' arguments are not addressed separately because they parallel those of Defendant, the United States. See Memorandum of Defendant-Intervenors U&A France and Arcelor Stainless USA, LLC in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("U&A France's Motion"); Response of Defendant-Intervenors, Outokumpu Stainless,

Ltd. and Outokumpu Stainless Coil, Inc. in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Outokumpu's Motion").

### III
### STANDARD OF REVIEW

In reviewing an ITC determination in a five-year review, the court will affirm the agency's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). Significantly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966)). The court will therefore affirm the agency's determination if it is reasonable and supported by the record. Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984); see also U.S. Steel Group v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996) ("[T]he question . . . is not whether [the court agrees] with the Commission's decision . . . [but] only to review those decisions for reasonableness."). Moreover, the court's function is not to "reweigh the evidence or substitute its own judgment for that of the agency," Usinor v. United States, 342 F. Supp. 2d 1267, 1272 (CIT 2004), nor must the court "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NRLB, 340

5

U.S. 474, 488, 71 S. Ct. 456, 465, 95 L. Ed. 456 (1951). The court must consider the whole record and "take into account whatever in the record fairly detracts from its weight." Id.

In reviewing any agency's construction of a statute the court applies the Chevron two-prong analysis, which first looks at whether Congress has spoken directly to the issue and second, where Congressional intent is unclear, "the court does not simply impose its own construction on the statute . . . [r]ather . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron U.S.A. v. Nat. Res. Def. Council Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978).

## IV
## ANALYSIS

As a result of the ITC's five-year review of outstanding antidumping and countervailing duty orders on SSSS from France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom, the Commission issued a final decision determining that revocation of antidumping duty orders on SSSS from France and the United Kingdom would not be likely to lead to continuation or recurrence of material injury to an industry in the United States within a foreseeable time. See, e.g., Notice of Final Results, 70 Fed. Reg. 41,236. The part of the ITC's decision which is challenged by Plaintiffs concern the Commission's determination not to cumulate subject imports from France and the United Kingdom and the Commission's negative material injury determination pertaining to imports from France.

6

**A**
**Cumulation in Five-Year Reviews**

Cumulation is discretionary in five-year reviews commenced under section 1675(c), provided that the reviews are initiated on the same day and the ITC determines that the subject imports are likely to compete both with each other and the domestic like product in the United States. 19 U.S.C. § 1675a(a)(7); Views at 7. The statutory scope of the ITC's discretion in a cumulation inquiry is set out in 19 U.S.C. § 1675a(a)(7) and provides that:

> [T]he Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

19 U.S.C. § 1675a(a)(7); see also Views at 7. The purpose of mandating cumulation under appropriate circumstances "is to eliminate inconsistencies in Commission practice and to ensure that the injury test adequately addresses simultaneous unfair imports from different countries." Trade Remedies Act of 1984, H.R. Rep. 98-725, at 37 (1984), reprinted in 1984 U.S.C.C.A.N. 5127, 5174. Indeed, the Congressional rationale for cumulation is to stem "competition from unfairly traded imports from several countries simultaneously [which] often has a hammering effect on the domestic industry . . . [that] may not be adequately addressed if the impact of the imports are [sic] analyzed separately on the basis of their country of origin." H.R. Rep. No. 100-40, part 1, at 130 (1987). Congress intended the agency to have such discretion as a fairer way in which to review the impact of foreign imports on the domestic industry. See, e.g., Neenah Foundry Co. v. United States, 25 CIT 702, 709, 155 F. Supp. 2d 766 (2001). While the ITC's

discretion is not unfettered, its "exercise of discretion [must] be predicated upon a judgment anchored in the language and spirit of the relevant statutes and regulations." Freeport Minerals Co. v. United States, 776 F.2d 1029, 1032 (Fed. Cir. 1985).

In its cumulation analysis of subject imports from France and the United Kingdom, the Commission made two separate findings pertaining to: (1) whether imports are likely to compete with each other and the domestic product and (2) the likelihood of no discernible adverse impact on the domestic industry if the orders were revoked. Views at 8. In both cases the Commission made an affirmative decision with respect to all eight countries affected by the orders under review.[2] Id.

In its determination of whether imports are likely to have no discernible adverse impact on the domestic industry, the Commission generally considers the likely volume of subject imports and the likely impact of such imports on the domestic industry within a reasonably foreseeable time if the orders are revoked. Id. at 19. As pertaining to imports from France, the Commission made an affirmative determination on the basis that French imports to the United States increased during the period of review, that the French producer remained export oriented and had excess capacity. Id. at 9. Similarly for the United Kingdom, the Commission found that imports from the United Kingdom would have a discernible adverse impact if the orders were

---

[2] The Commission based its analysis of whether imports are likely to compete with each other and the domestic product on the four factors it generally considers, namely: (1) the degree of fungibility between products; (2) the presence of sales or offers to sell in the same geographic markets; (3) the existence of common or similar channels of distribution; and (4) the simultaneous presence of imports in the market. Views at 8 n.35 (citing Wieland Werke, AG v. United States, 13 CIT 561, 563, 718 F. Supp. 50 (1989)). The Commission need only make a finding that a "reasonable overlap" of competition exists in order to meet the statutory requirement. U.S. Steel Group v. United States, 18 CIT 1190, 1199, 873 F. Supp. 673 (1994), aff'd, 96 F.3d 1352 (Fed. Cir. 1996); Views at 8.

revoked, based on a finding that the UK producer, Outokumpu, had some available capacity and both production capacity and exports remained relatively constant during the review period. Id. at 16. The ITC also found that the UK producer undersold the domestic product both in the original investigation and during the period of review. Id.

Whereas the ITC concluded for all other subject countries under review that the antidumping and countervailing duty orders remain in place, the Commission noted that in determining whether to exercise its discretion to cumulate subject imports that it assesses "whether the subject imports from certain countries are likely to compete under similar or different conditions in the U.S. market." Id. at 19. The Commission identified "significant differences" in the conditions of competition with respect to subject imports from France and the United Kingdom and therefore exercised its discretion not to cumulate imports from those countries. Id. at 8.

The Commission found that France displayed different pricing behavior than other subject imports before and after the order was put in place. Id. at 19. The Commission also found that French imports did not generally undersell domestic SSSS during the original investigation, that prices of French imports did not fall during 1998 (when the domestic industry's unit sales values and operating profits declined the most) and that during the period of review, imports from France oversold domestic SSSS. Id. Further, import volumes from France declined annually during the years examined in the original investigation. Id. In its determination not to cumulate imports from the United Kingdom, the Commission based its finding on the fact that import volumes dropped [considerably, to a level much lower than] any other subject country during the years examined in the original investigation, and fell to less than [   ] short

9

tons during the period of review. Id. at 19-20.  The ITC also considered that Outokumpu did not add to its production capacity during the review period and concentrated production purely on a specialty product, reflected in the increase of the average unit value ("AUV") of the UK product. Id. at 20.

The Commission based its overall decision not to cumulate subject imports from France and the United Kingdom primarily on pre- and post-order volume and price information and on estimations of export capacity.  The ITC specifically noted that the other six countries under review were unlikely to compete under different conditions of competition from each other because they each increased export volume during the review period, consistently undersold the domestic product and increased production capacity. Id. at 20.

**1**
**The Commission's Decision Not to Cumulate Subject Imports from France and the United Kingdom is Supported by Substantial Evidence and in Accordance with Law**

Plaintiffs argue that, based on the Commission's affirmative finding of each of the two statutory prerequisites to cumulation, the ITC abused its discretion by refusing to cumulate imports from France and the United Kingdom based only on the third prong of its inquiry into different conditions of competition. Plaintiff's Motion at 8-9.  Plaintiffs make four specific assertions relating to how the Commission's refusal to cumulate constitute an abuse of discretion. Id. at 14.  First, Plaintiffs contend that the ITC relied only on pre-order volume and price factors and did not adequately examine likely conditions of competition which it had set out elsewhere in its report. Id.  Second, Plaintiffs claim that the Commission utilized the same factors it considered in reaching a negative injury determination and engaged in "circular

10

analysis" which this court has rejected in prior cases. Id. Third, Plaintiffs assert that an examination of conditions of competition is inconsistent past precedent, and fourth, that the consideration of pre-order trends are less valuable indicia of conditions of competition as opposed to more recent evidence of likely volume and price. Id. at 15. Defendant counters that cumulation is discretionary in five-year reviews and that the Commission acted in accordance with the plain meaning of the statute, which reads that the Commission "may" cumulate if the competition requirement is met and the no discernible adverse impact provision is not. Memorandum of Defendant U.S. International Trade Commission in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Defendant's Motion") at 12; 19 U.S.C. § 1675a(a)(7). Further, Defendant argues that because the statute does not direct the Commission to consider specific factors in its cumulation analysis, relying on differing conditions of competition based on an analysis of import trends is a permissible exercise of its discretion. Id. at 13.

**i**
**The Commission's Examination of Pre-Order Volume and Price Trends Adequately Warrants a Finding of Different Conditions of Competition**

Plaintiffs assert that the Commission's analysis of absolute values and price and volume trends does not constitute an adequate examination of conditions of competition as set out in the Commission's Antidumping and Countervailing Duty Handbook. Plaintiffs' Motion at 15 (relying on U.S. Int'l Trade Comm'n, ANTIDUMPING AND COUNTERVAILING DUTY HANDBOOK, 10th ed., USITC Pub. 3750 at C-3 (January 2005) ("AD & CVD Handbook"), http://www.usitc.gov/publications/webpubs.htm (last visited December 14, 2006). The outline of conditions of competition to which Plaintiffs refer appear to expand on the "impact on the

11

industry" analysis as part of the material injury determination pursuant to 19 U.S.C. § 1675a(a)(4) and is not specific to the cumulation inquiry. Plaintiffs' argument ignores the fact that cumulation, pursuant to the statute, is discretionary once the threshold requirements of § 1675a(a)(7) have been met. 19 U.S.C. § 1675a(a)(7); see also AD & CVD Handbook at II-38. Thus, discretionary cumulation does not preclude the Commission from considering any factors it considers relevant, much less relying on an analysis of pre- and post-order pricing behavior and volume trends.

**ii**
**The Commission's Reasoning in Declining to Cumulate Imports from France and the United Kingdom Was Not Unlawfully Circular**

Relying on this court's decision in Neenah Foundry Co., Plaintiffs contend that in the context of sunset reviews, the court has held it to be an abuse of discretion "to engage in circular analysis, relying on the same factors for refusal to cumulate as for an ultimate negative injury determination." Plaintiffs' Motion at 11 (quoting Neenah, 25 CIT at 709). Plaintiffs argue with regard to imports from France that the Commission failed to analyze likely conditions of competition that would prevail if the orders were revoked and instead "supplanted that analysis with an examination of injury factors." Plaintiffs' Motion at 15. Plaintiffs concede that the ITC considered a range of factors affecting likely volume and price impact on the domestic industry, but argue that volume and price factors were central to the ITC's refusal to cumulate imports from France. Id. at 20. With regard to the United Kingdom, Plaintiffs contend that the Commission impermissibly refused to cumulate imports because failure to cumulate imports with a low likely volume and price impact under Neenah may constitute an abuse of discretion

without some "further justification." Id. at 21-22. Plaintiffs also argue that the ITC erroneously relied on the post-order absolute import volume by the UK importer and did not identify a distinct trend which formed the basis of the ITC's determination for other subject countries. Id. at 21.

The court in Neenah held that relying on the same factors in an injury determination thwarts congressional intent because it demonstrates "independent causation of material injury before any consideration of cumulation." Neenah, 25 CIT at 709. In articulating the circularity standard, the Neenah court relied on USX Corp. v United States, 12 CIT 205, 220-21, 682 F. Supp. 60 (1988) and Asociacion Colombiana de Exportadores de Flores v. United States, 12 CIT 1174, 1178, 704 F. Supp. 1068 (1988), both of which affirmed the Commission's decision in two separate instances not to cumulate imports based on different import trends. The Neenah court held that if import trends are considered for different purposes, namely in the cumulation and injury determination, this does not result in an impermissible circular analysis. Neenah, 25 CIT at 711. The Neenah court noted that "[w]hile import trends will therefore play a role in both causation and cumulation analyses in sunset reviews, such trends are considered for different purposes . . . ." Id. The court continued to state that the consideration of import trends is "not the equivalent of an injury analysis thereof." Id. In fact, the Neenah court identified the issue of circularity in cases involving volume, price and market share as a "narrow, but important one, hinging on trends as opposed to absolutes." Id. at 712. Instead, the improper circular analysis that the Neenah court referenced does not preclude the use of import trends in discretionary five-year review cumulation analyses. Id.

In making its cumulation determination pertaining to French imports, the ITC relied primarily on pre- and post-order volume and pricing trends, whereas in its injury determination, the Commission compared absolute volume data, pricing information, market share, product characteristics and potential impact on the domestic industry. Views at 19, 38-39. As a result, the Commission did not consider identical factors in making the two determinations, and where there was an overlap in the trend analyses used, the ITC utilized the information for different purposes in accordance with the standard articulated in Neenah. See id.

The Commission's decision not to cumulate imports from the United Kingdom was not based solely on the absolute volume of subject imports, but also on the fact that subject imports declined each year during the review period. Views at 19-20. The Commission also inquired into types of SSSS and export capacity, concluding that imports from the United Kingdom had been concentrated in precision strip and that Outokumpu did not add to its production capacity during the review period. Id. Consequently, the Commission did not rely only on low volume figures and pre-order imports in making its cumulation decision, but also based its analysis on product-mix trends, production capacity trends and volume trends, which are adequate to sustain a finding not to cumulate imports. Therefore, even if the Commission decided not to cumulate based only on the low volume and price impact of the UK imports contrary to the standard articulated in Neenah, here the ITC provided sufficient evidence and "further justification" not to cumulate. In fact, the Commission relied primarily on permissible trend analyses in making its determination, the breadth of which defeats Plaintiffs' argument that the Commission only considered the absolute volume of imports in making its decision not to cumulate imports from the United Kingdom.

14

**iii**
**The Commission's Reliance on Conditions of Competition was Internally Consistent with Past Cases and the Commission's Focus on Pre-Order Behavior is Consistent with the Prospective Nature of the Sunset Review**

Plaintiffs assert that the basis for the Commission's refusal to cumulate subject imports is inconsistent with prior decisions where the ITC had considered whether imports had undersold U.S. producers pre-order and whether there was a pre-order decline in the volume of imports as compared to other countries. Plaintiffs' Motion at 22-23. Plaintiffs argue that the Commission's alleged departure from "past practice" caused it to act so far outside the scope of its discretion as to amount to an abuse. Id. at 24-25; see e.g., Crosthwait v. Fed. Commc'ns Comm'n, 584 F.2d 550, 556 (D.C. Cir. 1978) (Noting that an agency may not "make decisions that are so inconsistent with its own precedent as to constitute arbitrary treatment amounting to an abuse of discretion . . . ."). Plaintiffs further assert that the Commission's consideration of pre-order trends, partly to the exclusion of current information, contradicts the prospective nature of the sunset review and that the Commission should have focused on recent data that more closely approximates future behavior of importers. Plaintiffs' Motion at 27. Indeed, Plaintiffs contend that it is incumbent on the Commission to provide an explanation of why pre-order trends, as opposed to current information regarding capacity, production and exports is a better indicator for purposes of projecting likely future behavior. Id.

Contrary to Plaintiffs' assertions, the Commission has previously relied on conditions of competition in its cumulation determination and considered a variety of factors such as whether subject imports have maintained a post-order presence in the U.S. and whether there is a similar demand outlook for the imports to be cumulated. See, e.g., Stainless Steel Bar from Brazil, India,

15

Japan and Spain, USITC Pub. 3404 at 11, 13-14, Inv. Nos. 731-TA-678-679 and 681-682 (March 2001); see also Forged Stainless Steel Flanges from India and Taiwan, USITC Pub. 3827 at 7-8, Inv. Nos. 731-TA-639 and 640 (December 2005). The Commission's consideration of different conditions of competition was based on an examination of pricing behavior before and during the review period. Plaintiffs' Motion at 19. The Commission noted that during the original period of investigation French subject imports were generally priced higher than U.S. products and that French imports had been consistently oversold during the period of review, but concluded that consistent overselling and the limited likely volume of subject imports were not likely to significantly depress or suppress domestic prices if the order was revoked. Views at 34. In its decision not to cumulate imports from France, the Commission relied almost exclusively on comparative impact, volume and price trends in making its injury determination and therefore acted in a manner consistent with the plain meaning of the statute in its decision not to cumulate imports from France. See, e.g., Chevron, 467 U.S. at 842-43; Zenith Radio Corp., 437 U.S. at 450.

Further, Plaintiffs have not made any pertinent substantive challenges to the findings that the Commission relied on in making its cumulation determination. Instead, Plaintiffs propose several factors that the Commission could have considered in evaluating the prevailing conditions of competition but fall short of establishing any such factors as incumbent on the ITC in making its determination. Plaintiffs argue that the Commission erred in weighing the available factors, ignoring the ITC's latitude in deciding whether to cumulate and disregarding the appropriate scope of the court's review. The court does not substitute its judgment for that of

16

the agency where the agency's analysis is adequately supported by substantial evidence. See, e.g.,

Universal Camera Corp. v. NRLB, 340 U.S. at 488.

Pursuant to statutory authority, the Commission has wide latitude in selecting the types of

factors it considers relevant in undertaking its cumulation analysis.  Each individual sunset

determination does not bind the Commission to use those same factors in other determinations.

See Neenah, 25 CIT at 709; Cogne Acciai Speciali S.p.A. v. United States, Slip Op. 05-122,

2005 Ct. Int'l Trade LEXIS 130, at *4 (CIT September 12, 2005).  In fact, case law suggests that

five-year reviews are considered of limited precedential value. See, e.g., Ugine-Savoie Imphy v.

United States, 26 CIT 851, 863, 248 F. Supp. 2d 1208 (2002).  However, even if the Commission

was bound by its prior determinations, Plaintiffs cite to only two former reviews in which the

Commission cumulated imports despite volume and price trends. Plaintiffs' Motion at 24-25.

Furthermore, case law suggests that discretionary cumulation is permitted even if the analysis

relies exclusively on volume and price trends analyses. See Neenah, 25 CIT at 711.

The Commission did not contradict the prospective nature of the sunset review in its

consideration of pre-order data, nor did the Commission focus its inquiry solely on price trends.

For example, it reviewed overselling by France both pre- and post-order. Views at 39.  The value

of pre-order data is widely recognized.  The Statement of Administrative Action emphasizes the

significance of pre-order data, noting that "this period is the most recent time during which

imports of subject merchandise competed in the U.S. market free of the discipline of an order."

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act

("SAA"), H.R. Doc. 103-826, vol. I, at 884 (1994), reprinted in, 1994 U.S.C.A.A.N. 4040, 4209.

Thus, considering pre-order information was not contradictory to the prospective nature of the

sunset inquiry, nor did the Commission exclusively consider pre-order data in making its determination. It is not the reviewing court's role to "'refind[] the facts . . . or interpose its own determinations,'" but instead to "review the Commission's findings only to ensure that they are without legal error and supported by substantial evidence." ALTX, Inc. v. United States, 370 F.3d 1108, 1124 (Fed. Cir. 2004) (quoting Nippon Steel Corp. v. USITC, 345 F.3d 1379, 1381 (Fed. Cir. 2003)). In this case the Commission's finding was adequately substantiated and not contrary to past precedent and the prospective inquiry. Therefore, the court need not inquire into possible alternative factors indicative of conditions of competition.

**2**
**The Commission Did Not Abuse its Discretion by Declining to Cumulate Imports from the United Kingdom and the Commission Did Not Base its Conclusions on Faulty Factual Conclusions**

Plaintiffs assert that the Commission based its cumulation decision on faulty factual conclusions that, if interpreted differently, would have given rise to a finding that the United Kingdom did not compete under different conditions of competition. Plaintiff's Motion at 29. Specifically, Plaintiffs argue the United Kingdom's production capacity rose [significantly] from pre-order levels and although exports were concentrated in precision strip, Outokumpu continued to produce commodity grade SSSS that competed with other imports. Id. Plaintiffs assert that "[h]ad the Commission looked at 'likely' competition from the United Kingdom, rather than at sales that reflected the restraining effects of the order, it would have found . . . that there would be an overlap in competition," (such as the Commission previously found with respect to all eight countries subject to the review) and that there were not a sufficient amount of factors that set the UK producer apart from producers in other countries subject to the antidumping orders.

18

Id. (relying on Views at 17). Defendant argues that the Commission's decision not to cumulate subject imports was permissible because it rested on distinct import trends, and not the absolute volume of imports. Defendant's Motion at 24.

Plaintiffs' assertion that Outokumpu's SSSS production capacity rose significantly between pre-order levels in 1998 and post-order levels, does not recognize that the low volume of overall imports supports a finding that the producer is unlikely to have a discernible impact on the domestic industry and that there is a reasonable overlap in competition. Plaintiffs argument that the Commission's conclusions were based on faulty factual conclusions fails because it does not account for the low absolute volume of the UK imports as a significant consideration in the Commission's volume trend analysis. Therefore, the Commission did not base its determination on faulty factual conclusions and its decision not to cumulate UK imports is supported by substantial evidence and is in accordance with law.

**B**
**The Commission's Finding that Imports from France Were Not Likely to Cause Material Injury to the Domestic Industry or Lead to Continuation or Recurrence of Material Injury was Supported by Substantial Evidence**

In five-year reviews, Commerce will revoke an antidumping duty order unless (1) Commerce determines that dumping is likely to continue or recur, and (2) the Commission decides that material injury is likely to continue or recur within a reasonably foreseeable time. 19 U.S.C. § 1675a(a)(1). The Commission is required to consider "likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked." Id. The material injury inquiry is prospective in nature, assessing the likely future impact on the domestic industry if the order is revoked. The Statement of Administrative Action states that:

19

under the likelihood standard, the Commission will engage in a counter-factual analysis: it must decide the likely impact in the reasonably foreseeable future of an important change in the status quo – the revocation or termination of a proceeding and the elimination of its restraining effects on volumes and prices of imports.

SAA, H.R. Doc. No. 103-826, at 883-84. In conducting a review under 19 U.S.C. § 1675(c), the Commission is required to consider prior injury determinations, including volume, price effect, impact of imports before the order was in place, improvements in the state of the industry, industry vulnerability and Commerce's duty absorption findings. 19 U.S.C. § 1675a(a)(1)(A)-(D). For each of the volume, price and impact on industry determinations, the statute provides an outline of factors that shall be considered for each. 19 U.S.C. § 1675a(a)(2)-(4). The statute also provides that "the presence or absence of any factor which the Commission is required to consider . . . shall not necessarily give decisive guidance with respect to the Commission's determination. . . ." 19 U.S.C. § 1675a(a)(5) (emphasis added).

In the determination under review, the Commission found that revocation of the antidumping duty order on SSSS from France would not likely lead to continuation or recurrence of material injury within a reasonably foreseeable time based on a review of volume, price and impact of French imports. Views at 38. The Commission found that French imports declined during the original investigation to account for less than one percent of apparent U.S. consumption in 1998, and although imports increased irregularly from 1999 to 2004, that French imports continued to account for less than one percent of the U.S. market during the current period of review. Id. at 38. It also concluded that French imports continued to be priced higher than the comparable U.S. product and that even though the order may have had some impact on pricing, that French imports oversold domestic SSSS during the original investigation and

20

consequently that subject imports from France would be unlikely to undersell the domestic product if the order was revoked. Views at 39. In evaluating the impact of French imports on the domestic industry, the Commission found that the domestic industry is not vulnerable based on reported profits in 2004. It therefore concluded that, coupled with its volume and price determinations, imports from France overall were unlikely to cause material injury within a reasonably foreseeable time if the antidumping duty order was revoked. Id.

## 1
### The Commission's Findings on Conditions of Competition are Supported by Substantial Evidence

In Plaintiffs' challenge to the Commission's injury determination, Plaintiffs suggest that the French producer's changing ownership structure from the original investigation to the period of review accounted both for the French pre-order decline and the post-order increase in exports. Plaintiffs' Motion at 31. Plaintiffs argue that the Commission did not take this factor into account and as a result, failed to adequately consider a change in the "conditions of competition" affecting the French producer. Id. at 31-32. In addition, Plaintiffs argue that using pre-order behavior to project likely volume, price and impact of SSSS from France on the U.S. market neglected to account for fundamental changes in the world supply and demand of SSSS after the orders were put in place. Id. at 32. The Commission assumed that any excess capacity from France would likely go to third country markets, as it did pre-order. Id. Because the Commission made a finding elsewhere in its report that world consumption of SSSS had increased during the period of review and world capacity is due to exceed consumption leading to a downward price pressure in the global market, Plaintiffs argue that the Commission did not examine this trend

with regard to whether it would lead the French producer to reduce prices and increase exports to the U.S. market. Id. at 32; Views at 28.

Defendant contends that Plaintiffs' entire line of argument fails to challenge any specific condition of competition upon which the Commission relied, and that the Commission did take into account the French producer's organizational restructuring. Defendant further argues that the Commission relied not only on pre-order data, but considered the full range of factors in the statute. Defendant's Motion at 29-30; 19 U.S.C. § 1675a(a).

The Commission properly relied on pre-order evidence, among other considerations, in accordance with the express statutory mandate. 19 U.S.C. § 1675a(a)(1). The Commission concluded, based on an in-depth analysis of volume, price and impact using pre- and post-order data that French imports would not likely result in material injury to the domestic industry if the order was revoked. Views at 38. Contrary to Plaintiffs' assertions, the Commission provided significant analyses in its report of the overall SSSS market and considered the likely impact on the domestic industry within the context of "conditions of competition that are distinctive to the affected industry" as directed by the statute. 19 U.S.C. § 1675a(a)(4); Views at 25. The Commission's review of the relevant conditions of competition included consideration of apparent consumption of SSSS (which had increased during the period of review), general "substitutability" of SSSS grades among producers, and recognition that price is the most important consideration among consumers of SSSS. Views at 25. Thus, Plaintiffs' assertion that the Commission neglected to take conditions of competition into consideration is without merit. In fact, Plaintiffs' entire argument rests on identifying additional factors which the Commission could have considered or could have construed to obtain an alternative outcome. However,

22

Plaintiffs' argument notably fails to consider that the court will not evaluate the merits of other available factors that the Commission might have, but did not take into account when making its determination, where the decision under review appears to be supported by substantial evidence. See e.g., Consolo, 383 U.S. at 619-20. It is not the court's role to substitute its judgment for that of the agency considering the agency's analysis was undertaken in accordance with the plain language of the statute and adequately supported by the facts in the record. See Universal Camera Corp., 340 U.S. at 488.

**2**
**The Commission's Volume, Price and Impact Determinations on Imports from France are Supported by Substantial Evidence and Consistent with its Cumulated Import Analyses**

Plaintiffs further contend that the Commission's volume, price and impact determination it cited in its cumulation analyses is inconsistent with the material injury determination. Plaintiffs' specifically attack the Commission's finding of "likely to have no discernible adverse impact" analysis, which found that the volume of French imports had increased during the period of review, that the French producer remains interested in exporting to the U.S. and that [a significant percentage] of the French producer's output was produced for export. Views at 9. The Commission also found that its exports were mainly specialty products and that the French producer had excess capacity. Id.

Plaintiffs' objections to the seeming inconsistencies between the Commission's finding in its adverse impact analysis and its overall material injury determination ignores the absolute volume of French imports, that the French product consistently oversold the domestic product pre- and post-order and that the projected overall impact of French imports as a result would

23

remain minimal in the event of a revocation of the order. Thus, although French imports rose

substantially ([ %]) during the period of review, they still constituted only less than 1% of the

U.S. market share towards the end of the review period in 2004. <u>Views</u> at 38-39. Plaintiffs' use

of percentages ignores this fact, and the fact that imports from the other six subject countries far

exceeded imports from France both in absolute volume and market share by [many] times

relative to U.S. consumption. <u>Id.</u> In its material injury determination the Commission therefore

reasonably concluded that the volume of subject imports from France were unlikely to be

significant within the reasonably foreseeable future if the order was revoked. <u>Id.</u> at 38.

Furthermore, in the Commission's price analysis, it found that consistent overselling by

France in the pre- and post-order periods meant that the French importer was unlikely to

significantly undersell the domestic industry, that some overselling was to be expected, and that

overselling does not preclude an affirmative injury determination. <u>Original Determination</u> at 17

("[G]iven the product mix and close price competition, a mix of overselling and underselling by

subject imports is not unexpected."). In spite of the fact that France's overselling fell from 75%

to 65% from the original investigation through the review period, France still oversold at all

times, pre- and post-order. <u>Id.</u> The Commission as a result concluded that these price trends in

conjunction with a low likely volume were unlikely to have significant price-suppressing or

price-depressing effects. <u>Id.</u> at 19. In addition, the Commission's reliance on volume, price,

production capacity and the resulting impact on the domestic industry is contemplated by the

statute and therefore is a permissible analysis of the data. <u>Views</u> at 38; <u>see</u> 19 U.S.C. § 1675a(a).

Furthermore, the Commission's likely impact determination, which is contingent on a finding

that the volume and price effects are insignificant in the cumulation inquiry, is also supported by substantial evidence. Id.

## V
## Conclusion

For the foregoing reasons the ITC's five-year review in Stainless Steel Sheet and Strip from France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom, Inv. Nos. 701-TA-381-382 and 731-TA-797-804 (Review), USITC Pub. 3788 (July 2005) is sustained.


                                __/s/ Evan J. Wallach_____
                                    Evan J. Wallach, Judge


Dated:  December 22, 2006
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

ALLEGHENY LUDLUM CORP. and  
AK STEEL CORP.,

          Plaintiffs,

     v.

UNITED STATES,

          Defendant,

     and

OUTOKUMPU STAINLESS, LTD., <u>et al.</u>,

          Defendant-Intervenors.

_____

Before:      WALLACH, Judge  
Court No.:   05-00488


<u>ORDER</u>

      This case having come before the court upon the Motion for Judgment Upon the Agency Record filed by Allegheny Ludlum Corporation and AK Steel Corporation (collectively, "Plaintiffs' Motion"); the court having reviewed all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

      ORDERED ADJUDGED AND DECREED that Plaintiffs' Motion is DENIED, and it is further

      ORDERED ADJUDGED AND DECREED that the decision of the United States International Trade Commission ("ITC") in <u>Stainless Steel Sheet and Strip from France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom</u>, Inv. Nos. 701-TA-381-382 and 731-TA-797-804, USITC Pub. 3788 (July 2005) is hereby SUSTAINED; and it is further

      ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Friday, January 5, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative language for any portions they wish deleted. If a party determines that no information needs to be deleted, that

party shall so notify the court in writing on or before January 5, 2007.

_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated:  December 22, 2006
        New York, New York